IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

**ANTONIO J. BULLOCK**                                                                  **PETITIONER**
Reg. #31430-034

V.                              CASE NO. 2:18-CV-84-BSM-BD

**GENE BEASLEY, Warden,**
Federal Correctional Institution-Low,
Forrest City, Arkansas                                                                  **RESPONDENT**

### RECOMMENDED DISPOSITION

**I.     Procedure for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to Chief Judge Brian S. Miller. Any party to this suit may file written objections with the Clerk of Court within fourteen (14) days of filing of the Recommendation. Objections should be specific and should include the factual or legal basis for the objection. An objection to a factual finding must identify the finding of fact believed to be wrong and describe the evidence that supports that belief.

By not objecting, any right to appeal questions of fact may be jeopardized. And, if no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record.

**II.    Introduction:**

Antonio Bullock, an inmate at the Federal Correctional Complex in Forrest City, Arkansas, brings this Petition under 28 U.S.C. § 2241, challenging the Bureau of Prison's ("BOP") calculation of his sentence. (Docket entry #1) Mr. Bullock contends that,

because his federal sentence was ordered to run concurrently to his state sentence, his federal sentence predated its imposition and should be deemed to have begun when he was arrested and entered custody. (#1) Respondent has filed a response to the petition (#8), and it is ready for review.

### III.     Background:

On October 1, 2009, Mr. Bullock was on probation in Louisiana on state convictions (case numbers 482-209 and 484-703) when he was again arrested and charged (case number 492-803) with distributing marijuana and being a felon in possession of a firearm. (#8-1 at 4) *See United States v. Bullock*, No. 2:10-CR-75-MVL-SS (E.D. LA) (#45) (summarizing state charges). As a result of the new charges, the State of Louisiana moved to revoke his probation. (#8-1 at 4-5, 27-31) *Id*.

On November 10, 2009, Mr. Bullock's probation was revoked in case number 484-703, and he was sentenced to five years' imprisonment in the Louisiana Department of Correction ("LDC"), with credit given for time served. (#8-1 at 4-5, 27-31) *Id*. Similarly, on December 4, 2009, his probation was revoked in case number 482-209. (#8-1 at 4-5, 27-31) *Id*. Mr. Bullock was again sentenced to five years' imprisonment in the LDC, with credit given for time served. (#8-1 at 4-5, 27-31) *Id*. The five-year sentences were ordered to run concurrently. (#8-1 at 4-5, 27-31) *Id*.

Subsequently, Mr. Bullock was federally indicted in the Eastern District of Louisiana on March 18, 2010. (#8-1 at 33-39) *Bullock*, Case No. 2:10-CR-75-MVL-SS (E.D. LA) (#1). The charges stemmed from his October 1, 2009 arrest and included a felon-in-possession-of-a-firearm charge, in violation of 18 U.S.C. §§922(g)(1) and

924(a)(2); a possession-with-intent-to-distribute marijuana charge, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D); and a charge of possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. §924(c)(1)(A). (#1) *Id.*

Mr. Bullock was transferred from the custody of the LDC to the custody of the United States Marshal pursuant to a writ of habeas corpus *ad prosequendum* issued on March 23, 2010, commanding Mr. Bullock's appearance in federal court. (#8-1 at 41). On March 24, 2011, Mr. Bullock pleaded guilty to two of the three charges in a plea agreement that included dismissal of the third charge. He was sentenced on July 28, 2011 and was given an aggregate sentence of 156 months' imprisonment. (#8-1 at 46-50) The federal sentence was ordered to run concurrent with his previously imposed state sentences. (#8-1 at 47) *Bullock*, Case No. 2:10-CR-75-MVL-SS (E.D. LA) (#41 at 8).

Thereafter, the Marshal returned Mr. Bullock to Louisiana state custody on August 1, 2011, and a federal detainer was lodged. (#8-1 at 43-44) Mr. Bullock completed his state sentences and was released from state custody on January 23, 2012, whereupon he was transferred to the BOP. (#8-1 at 54)

Once at the BOP, Mr. Bullock was given a *nunc pro tunc* designation for service of his federal sentence. In doing so, the BOP designated the LDC as the facility where Mr. Bullock had begun service of his federal sentence. (#8-1 at 18, 23, & 59) As a result, the BOP designated July 28, 2011, the date his federal sentence was imposed, as the beginning date for service of his federal sentence. (#8-1 at 6-7, 18, 56-57, & 59)

Additionally, the BOP gave Mr. Bullock 40 days' credit toward his sentence for the time between his October 1, 2009 arrest and his first conviction on November 10,

2009. *Willis v. United States*, 438 F.2d 923 (5th Cir. 1971) (an inmate is entitled to receive credit toward his federal sentence for all pre-sentence, non-federal custody that occurs on or after the date of the federal offense until the date that the first sentence, whether state or federal, begins).

### IV.     Discussion:

    A.     *Exhaustion of Administrative Remedies*

Prisoners are generally required to exhaust their administrative remedies before filing a petition pursuant to § 2241. *United States v. Chappel*, 208 F.3d 1069, 1069-70 (8th Cir. 2000) (*per curiam*). Administrative exhaustion "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (internal citations omitted).

Under 28 C.F.R. § 542.13(a), an inmate aggrieved by an action of the BOP must first present the issue informally to staff. If the inmate is dissatisfied with the result of the informal process, he may pursue a three-step formal grievance process. In the formal process, the prisoner appeals to the Warden; then to the Regional Director; and last, to the Office of General Counsel.

A prisoner's administrative remedies are not considered exhausted until his grievance has been filed and denied at each step. *Denton v. Outlaw*, Case No. 2:10-CV-43-JMM-BD (E.D. Ark. 2010); 2010 WL 2804330, at *2. Exhaustion, however, is not required if it would be futile. See *Lueth v. Beach*, 498 F.3d 795, 797 n. 3 (8th Cir. 2007), *cert. denied*, 552 U.S. 1121 (2008) (addressing merits of federal prisoner's claims despite

alleged failure to exhaust administrative remedies, because the "exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional").

Mr. Bullock contends that he pursued his administrative remedies to challenge the BOP's calculation of his sentence, but the BOP denied his claim. (#1 at 2) Respondent contends that, while Mr. Bullock initiated administrative review, he failed to exhaust his administrative remedies when he did not perfect the appeal of his claims at the regional level. (#8-1 at 8)

In support, Respondent puts forth evidence of Mr. Bullock's failure to exhaust through the declaration of Bryan Erickson. (#8-1) Additionally, Respondent attaches a SENTRY Administrative Remedy Generalized Retrieval report, which purports to show that Mr. Bullock did not properly perfect his appeal. (#8-1 at 64-69) In his declaration, Mr. Erickson asserts that Mr. Bullock was "advised to resubmit the appeal properly" and cites to the SENTRY form as evidence. (#8-1 at 8) Whether this is true is unclear from the documents provided. Mr. Bullock has not responded to Respondent's exhaustion argument, but because the time for appealing administrative remedies has most likely run, see 28 C.F.R. § 542.15, the grievance process would now be futile, and a discussion of the merits is warranted.

    B. *The BOP Did Not Err in Calculating Mr. Bullock's Sentence*

Mr. Bullock believes that the BOP miscalculated his sentence, and he asks this Court to direct the BOP to recalculate his sentence and give him credit for every day he served in custody since his arrest. (#1 at 2) He believes that, when the federal court ordered that his federal sentence run concurrently with his state sentence, it intended that

he receive credit for time served on his state sentences that predated his federal sentence. His belief is legally baseless because there is no scenario where his federal sentence could begin to run before it was imposed.

The Attorney General, through the BOP, has responsibility for computing and determining the commencement of federal sentences. *United States v. Tindall*, 455 F.3d 885, 888 (8th Cir. 2006) (citing *United States v. Wilson*, 503 U.S. 329, 334-35 (1992)). A sentence generally commences on the date the defendant is received into custody for transportation to his official detention facility. 18 U.S.C. § 3585(a). A federal sentence, however, cannot commence prior to the date of its imposition. *Sisemore v. Outlaw*, 363 F.App'x. 424 (8th Cir. 2010) (*per curiam*) (citing *Coloma v. Holder*, 445 F.3d 1282, 1283-1284 (11th Cir. 2006)); see BOP Program Statement 5880.28, (#8-1 at 25) ("In no case can a federal sentence of imprisonment commence earlier than the date on which it is imposed."). The Court reviews the BOP's determinations for abuse of the agency's substantial discretion. *Fegans v. United States*, 506 F.3d 1101, 1105 (8th Cir. 2007).

While sentences usually begin on the date an inmate is received into custody, §3585(a), because the federal court ordered that Mr. Bullock's sentence run concurrent with his state sentences, the BOP determined that Mr. Bullock's federal sentence commenced on July 28, 2011, the date it was imposed. (#8-1 at 56-57) Further, although Mr. Bullock was then in the custody of the State of Louisiana, the BOP issued a *nunc pro tunc* designation, thus allowing his federal sentence to commence and run concurrent with his existing state sentences. (#8-1 at 59) Although Mr. Bullock did not enter the BOP until his release from state custody on January 23, 2012 (#8-1 at 54), he was given

6

credit for time served from the earliest possible date allowed by law; that is, the date his federal sentence was imposed.

Mr. Bullock wants the BOP to issue another *nunc pro tunc* designation giving him credit from the date he was arrested by the State of Louisiana on October 1, 2009. He cites no authority, however, to support the proposition that a *nunc pro tunc* designation can be made retroactive to a state-custody date that precedes imposition of a federal sentence. "To the contrary, federal courts have uniformly rejected this proposition." *Richardson v. Outlaw*, Case No. 2:10-CV-6-JTR (E.D. Ark. 2011); 2011 WL 671997, at *4 (string citation supporting premise omitted with exception of *Isles v. Chester*, No. 08–3028–RDR, 2009 WL 1010553, at *4 (D. Kan. April 15, 2009) ("Concurrent sentences normally mean that the sentence being imposed will run concurrently with the undischarged portion of a previously imposed sentence.")).

A federal prisoner is entitled to prior-custody credit for any time spent in official detention prior to the date the sentence commences, so long as the time was not credited to another sentence. 18 U.S.C. § 3585(b). When Mr. Bullock's state probation was revoked, he was sentenced and given credit for time served. Accordingly, the prohibition against double credit precluded Mr. Bullock from receiving credit for the time he was in state custody, with one exception.

After *Willis v. United States*, *supra*, the BOP may allow an inmate to receive credit toward his federal sentence for <u>pre-sentence</u>, <u>non-federal</u> custody that occurs on or after the date of the federal offense until the date that the first sentence (state or federal) begins. *Willis v. United States*, 438 F.2d at 925 (emphasis added). Mr. Bullock received

*Willis* credit for the time he was in state custody prior to being sentenced in state court. (#8-1 at 61-52) Specifically, he was credited with the 40 days between the time of his arrest on October 1, 2009, and the imposition of his first probation revocation sentence, November 10, 2009.

It is clear that the BOP properly determined when Mr. Bullock's sentence commenced and gave him all of the custody-credit allowable by law.

### V. **Conclusion**:

Mr. Bullock's challenge to the Respondent's computation of his federal sentence is legally without merit. The Court recommends that Judge Miller DISMISS WITH PREJUDICE Mr. Bullock's petition for writ of habeas corpus (#1).

DATED this 24th day of September, 2018.

_____
UNITED STATES MAGISTRATE JUDGE